IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **EMCASCO INSURANCE COMPANY,** | * * * | |
| **Plaintiff,** | * * | |
| v. | * * | Case No.: _____ |
| **ALA-TEMP CORPORATION, d/b/a A.T. MECHANICAL; AMASON & ASSOCIATES, INC.; CITY OF VESTAVIA HILLS, ALABAMA; ELDECO, INC.; TRANE U.S., INC., d/b/a TRANE; and NATIONAL UNION FIRE INS. COMPANY OF PITTSBURGH,** | * * * * * * * * * * * | |
| **Defendants.** | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff, EMCASCO Insurance Company ("EMC"), and files the following complaint for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*:

## Parties and Jurisdiction

1. Plaintiff is an Iowa corporation with its principal place of business in Iowa.

2. Defendant Ala-Temp Corporation d/b/a A.T. Mechanical ("ATM") is an Alabama corporation with its principal place of business in Pinson, Alabama. ATM

1

may be served via its registered agent, Terence Lee Sullivan, 6303 Lakewood Trail, Pinson, Alabama 35125.

3. Defendant Amason & Associates, Inc., ("Amason") is an Alabama corporation with its principal place of business in Tuscaloosa, Alabama. Amason may be served via its registered agent, Robert M. Amason, Jr., P.O. Box 1729, Tuscaloosa, Alabama 35403.

4. Defendant City of Vestavia Hills ("Vestavia" or "the City") is an Alabama municipality located in the Northern District of Alabama, Southern Division. Vestavia may be served via its Clerk, Rebecca Leavings, P.O. Box 660854, Vestavia Hills, Alabama 35266-0854.

5. Defendant Eldeco, Inc., ("Eldeco") is a Southern Carolina corporation doing business in Alabama. Eldeco may be served via its registered agent, Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104.

6. Trane U.S. Inc., d/b/a Trane ("Trane") is a Delaware corporation doing business in Alabama. Trane may be served via its registered agent Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104.

7. National Union Fire Ins. Company of Pittsburgh ("National Union") is a foreign insurance company which is licensed to do business in the state of

Alabama. It can be served via its registered agent Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104.

8. The underlying project for the construction of a Community Center (the "Project") is located in the Northern District of Alabama, Southern Division.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The parties to this action are diverse. Plaintiff is a citizen of Iowa and Defendants are citizens of states other than Iowa. The amount in controversy is satisfied. Vestavia, plaintiff in the underlying arbitration, claims damages in excess of $150,000.00.

10. Venue in the Northern District of Alabama, Southern Division is proper under 28 U.S.C. § 1332(a)(1).

## Facts

**A.   The Project and Failure of Chiller #2 in December 2022.**

11. Vestavia and Amason entered into a construction contract for the construction of the Vestavia Hills Community Center *i.e.*, the Project.

12. Part of the project included the installation of two chillers for an HVAC system.

13. Amason entered into a contract with ATM to perform HVAC work on the Project. The contract contained a provision requiring that ATM name Amason as an additional insured on its general liability policy.

14. ATM entered into a subcontract with Trane to install Temperate Controls for the HVAC system. The contract contained a provision requiring that Trane name ATM as an additional insured on its general liability policy.

15. Amason entered into a contract with Eldeco to perform electrical work on the Project. The contract contained a provision requiring that Eldeco name Amason as an additional insured under its general liability policy.

16. In October 2022, the Project was approaching substantial completion. A "punch list" of work to be completed was generated which contained an "Electrical Observation Report" ("EOR") dated October 19, 2022. The EOR stated that Chiller #2's breaker was in the trip position: "Investigate the reason for the trip and reset breaker." This punch list was provided to Amason.

17. On or about December 12, 2022, Vestavia accepted the Project as substantially complete with various exceptions indicated on a punch list. The punch list identified issues with respect to Chiller #2. Vestavia did not accept Chiller #2 at this time.

18. Between December 22 and December 25, 2022, a major-freeze event occurred in the city and its surrounding environs. Chiller #2 was damaged and rendered inoperable after the freeze event.

19. According to Vestavia, Chiller #2 failed because it had no power. The lack of power, because of the tripped breaker, caused the Chiller's heat tracing to be inactive leading to frozen and ultimately burst lines.

20. Chiller #2 was manufactured by Trane. Shortly after the freeze event, ATM and/or Amason made a warranty claim for damages to Chiller #2. Trane denied the warranty claim on or about January 26, 2023: "[S]ince the Chiller was not powered, the onboard freeze protection algorithm could not activate and the heat exchanger was damaged due to low ambient conditions. This is not covered under the warranty policy."

21. On June 26, 2023, the architect for the Project issued a letter directing Amason to repair or replace Chiller #2 and pay the costs of a rental chiller Vestavia had hired to replace Chiller #2 temporarily.

22. In January 2024, the architect rendered an "initial decision" under the construction contract between Amason and Vestavia which reiterated and adopted its previous finding on June 26, 2023.

**B.    The Arbitration**

23. On or about March 6, 2024, Vestavia filed a Complaint in arbitration with the American Arbitration Association against Amason (Case Number: 01-24-0002-5309, the "Arbitration") arising out of the failure of Chiller #2. A true and correct copy of Vestavia's arbitration Complaint is attached hereto as **Exhibit A**.

24. The Complaint speaks for itself. However, Vestavia claimed in relevant part that it was entitled to (a) the cost to repair Chiller #2 and issue the contractually required warranty; (b) the cost and expense of a rental chiller "until such time Chiller #2 is repaired, commissioned, and in service, estimated at $180,000 or less, and (c) any such further relief to which it may be entitled. (Ex. A, Par. 17.)

25. On March 25, 2024, Amason filed a motion in the arbitration to add ATM and Eldeco as third-party defendants. A true and correct copy of the Motion is attached as **Exhibit B**. Attached to the motion was a proposed Third-Party Complaint. Upon information and belief, the motion has been granted and the Third-Party Complaint filed of record in the Arbitration.

26. The Third-Party Complaint also speaks for itself. However, Amason alleged in relevant part that it was entitled to the payment of its attorney's fees and costs and any damages owed to Vestavia from ATM and/or Eldeco. It alleged that if Amason were liable to Vestavia for damages, it would be "derivative of the subcontractors who performed the work on the [P]roject; Eldeco and [ATM]." (Ex. B, Third-Party Complaint, Par. 5.)

**C.   The Policy**

27. In December 2022, ATM had in place a General Liability Insurance Policy bearing policy number 6D28336 (the "Policy") with EMC. A true and correct copy of the Policy in effect in December 2022 is attached as **Exhibit C.**

28.     Under Section I, Coverage A, of the Policy, EMC agrees to pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period.

29.     "Property damage" is defined as "physical injury to tangible property including all resulting loss of use of that property...or loss of use of tangible property that is not physically injured."

30.     Section I, Coverage A of the Policy comes with various exclusions that either exclude or limit coverage under the Policy.

31.     For instance, the Policy excludes coverage for property damage which the insured is obligated to pay damages by reasons of assumption of liability in a contract.  This exclusion, however, does not apply, to liability assumed in an "insured contract".  An "insured contract" is defined by separate endorsement (form is CG2426 4/13) to mean, in relevant part:

> **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

7

32. The Policy excludes, in relevant part, damage to "(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it...Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

33. "Your work" is defined as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations," and includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and (2) The providing of or failure to provide warnings or instructions."

34. The Policy excludes ""Property damage" to "your product" arising out of it or any part of it."

35. "Your product" is defined as: "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You..." and includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and (2) The providing of or failure to provide warnings or instructions."

36. The Policy excludes "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

37. The "products-completed operations hazard" "Includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed. (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site. (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

38. The Policy excludes ""Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

39. "Impaired property" is defined as "tangible property, other than "your product" or "your work", that cannot be used or is less useful because: a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement."

40. The Policy contains "The Additional Insured – Owners, Lessees, or Contractors – Automatic Status...., Endorsement" (CG7174.3(10-13), Section A.1). This endorsement includes as an additional insured any person or organization whom ATM is performing operation for and have agreed in writing that such person or organization will be added as an additional insured. These persons or organizations are additional insureds "only with respect" to liability for property damage caused in whole or in part by ATM's acts or omission or the acts and omission of those acting on ATM's behalf and in the performance of ATM's ongoing operations for the additional insured, or "your work" for the additional insured included in the "products-completed operations hazard." (Id. at A.2.)

41. The Policy also contains a General Liability Elite Extension, CG7578(2-19)), which contains an exclusion for expected or intended property damage on the part of an insured.

42. Both ATM and Amason have demanded that EMC defend and indemnify them from the claims in the Arbitration. EMC has agreed to defend both entities under a reservation of rights. True and correct copies of the reservation of rights letters issued to ATM and Amason are attached as **Exhibits D and E,** respectively.

43. In addition, Amason is being defended in the Arbitration under a reservation of rights issued by its liability insurance carrier.

**D.    Tender to Trane and National Union**

44. National Union has issued to Trane a CGL policy which covers the subject incident involving Chiller #2. Neither ATM nor EMC have been provided a full and complete policy of the National Union-Trane CGL Policy.

45. The National Union-Trane CGL policy contains an automatic additional insured endorsement making ATM an additional insured because the ATM-Trane contract requires (1) that Trane indemnify and defend ATM and (2) name ATM as an additional insured. Further, Trane has obtained a certificate of liability insurance naming ATM as an additional insured under its CGL Policy.

46. On November 15, 2023, counsel for ATM wrote a letter to Trane and National Union demanding defense and indemnity of ATM in the Arbitration under Trane's CGL policy with National Union. A copy of the demand letter is attached as **Exhibit F.**

47. On June 7, 2024, counsel for ATM renewed this demand to Trane and ATM via letter. A copy of this renewed demand is attached as **Exhibit G**.

48. To date, neither Trane nor ATM has agreed to defend and indemnify ATM in the Arbitration pursuant to the terms of the ATM-Trane Contract or the Trane-National Union CGL Policy.

## Count I—Defense and Indemnity
### (ATM and Amason)

49. EMC adopts and incorporates paragraphs 1 to 43.

50. The underlying facts, the allegations in the Arbitration, and the terms of the subject Policy create a justiciable controversy over the question whether EMC owes defense and indemnity to ATM in the Arbitration.

51. EMC seeks a declaration from this Court that it does not owe defense and indemnity to ATM or Amason in the Arbitration under the Policy.

52. Specifically, it seeks a declaration: (1) the damage to the Chiller is not a covered occurrence under the Policy; (2) the damage to the Chiller is not a covered accident; (3) the damage to the Chiller is an excluded expected or intended injury from the standpoint of an insured; and/or (4) coverage is excluded under the "your work", "your product", "impaired property," or "insured contract" exclusions.

## Count II—Defense, Indemnity, and Priority/Sharing
### (Trane and National Union)

53. EMC adopts and incorporates paragraphs 1-48.

54. EMC's Policy provides generally that it acts as primary and non-contributing insurance unless certain conditions are met, when it acts as excess insurance. (Ex. A CGL Section VI, Conditions, 4.a.) The Policy operates as excess insurance if, for instance, there is other primary coverage available to the insured covering liability for damages arising out of the operations, or products and completed operations for which an insured has been added as an additional insured. (Id. at 4.b.(1)(b).

55. Trane agreed to defend and indemnify ATM under the terms of its subcontract to perform work on the Project, and agreed to name ATM as an additional insured under its CGL policy with National Union. Trane has produced an insurance certificate with National Union showing ATM as an additional insured.

56. If there is coverage for ATM in the Arbitration under the EMC CGL Policy, then there exists a justiciable controversy between EMC, Trane, and National Union regarding (1) whether Trane and National Union owe defense and indemnity to ATM under the subcontract or the Trane-National Union CGL Policy; (2) whether Trane or National Union's defense and indemnity obligations are primary to EMC's; and (3) if Trane and National Union's obligation are on equal footing with EMC, how the costs for defense and indemnity should be shared between EMC, Trane, and/or National Union.

57. Accordingly, if this Court finds there is coverage for ATM under the EMC Policy under Count I, then EMC seeks a declaration: (1) Trane and National Union owe defense and indemnity to ATM in the Arbitration; (2) Trane and National Union's obligations are primary and any coverage afforded by EMC is excess; or (3) if EMC's coverage is not excess, for the Court to determine the method of sharing between EMC, Trane, and/or National Union.

### **Prayers for Relief**

The above premises considered, EMC seeks a declaration from this Court that:

1. It owes no duty to defend or indemnify ATM because there is no coverage for Vestavia's claims in arbitration and/or one of the above-referenced exclusions in the Policy applies;

2. It owes no duty to defend or indemnify Amason because there is no coverage for Vestavia's claims in arbitration and/or one of the above-referenced exclusions in the Policy applies; and,

3. If there is coverage for ATM under the EMC Policy, then Trane and National Union owe defense and indemnity to ATM in the Arbitration on a primary basis and any coverage afforded by EMC is excess, or if EMC's coverage is not excess, for the Court to determine the method of sharing between EMC, Trane, and/or National Union.

EMC further seeks such additional relief from the Court to which it may be entitled.

Respectfully submitted,

*/s/ J. Evans Bailey*
J. Evans Bailey (ASB-9995-J61B)
Katie D. Archer (ASB-1664-E61E
Attorneys for Plaintiff

**OF COUNSEL**:
Rushton, Stakely, Johnson & Garrett, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
(334) 206-3170
ebailey@rushtonstakely.com